## RONALDSON et al. v. VICKNAIR.*
### No. 1902.

Court of Appeal of Louisiana. First Circuit.
Nov. 17, 1938.

Rehearing Denied Dec. 19, 1938.

*Writ of certiorari denied by Supreme Court Feb. 6, 1939.

Wm. A. Benton, of Baton Rouge, for appellant.

J. Oliver Bouanchaud, of Baton Rouge, for appellee.

Le BLANC, Judge.

This is a suit by which the plaintiffs sought to obtain an injunction against the defendant to restrain and prohibit him from interfering with their or their agents' or tenants' right to use an alleged servitude of right of passage over his property. An exception of no cause of action filed by the defendant was referred to the merits and after issue was joined by the answer, the case was submitted on both the exception and the merits. In the meantime defendant also filed a plea of prescription of ten years liberandi causa for non user of the servitude. The district judge overruled the exception of no cause of action and the plea of prescription and on the merits rendered judgment in favor of the plaintiffs granting the injunctive relief as prayed for by them. The defendant has appealed.

The plaintiffs are Mrs. Eugenia G. Ronaldson, born Gurley, widow of Henry Y. Ronaldson, Walker Y. Ronaldson and Gordon M. Ronaldson. They alleged themselves to be the owners of the south half of a certain tract of land containing two hundred and twelve acres more or less, situated in the Tenth Ward of the Parish of East Baton Rouge, with certain given boundaries, and being designated on a plat made by L. Q. Huey, Civil Engineer, by the numeral "4", which plat is annexed to and made part of their petition. They alleged that they acquired the property from the Succession of Henry Y. Ronaldson and set out the chain of title by which he owned it under certain deeds dating as far back as January 15, 1904, at which time, the whole tract belonged in indivision to one William M. Woodward, their author in title, and one Adolph Bourke. On the date mentioned they alleged that as will appear from an act of partition, a certified copy of which is annexed to their petition, the said William M. Woodward and Adolph Bourke entered into an act of amicable partition by the terms of which the tract of land was to be divided by a line running east and west thus making two separate tracts, and that Adolph Bourke was to have and did accept as his portion, the northern half thereof and the said William M. Woodward, the southern half. The plat prepared by L. Q. Huey, C. E., and which is annexed to the petition of the plaintiffs is a reflection of the partition of the said tract of land on which, as already stated he has designated the Woodward tract as Tract "4", and he also designated the Bourke tract which is now owned by defendant as Tract "3".

In the act of partition just referred to, there is contained the following stipulation:

"It being distinctly agreed and understood that the said W. M. Woodward, his heirs and assigns, that the said W. M. Woodward, is to have a perpetual right of way across the lands of the said Bourke hereinabove described, to the French Town Road."

There is evidently unnecessary repetition of the words "that the said W. M. Woodward" which however does not detract from the meaning and the intention of the clause and we might state here that no point is made of that, the same not being mentioned at all by counsel on either side.

The plaintiffs alleged that as appears in the deed itself granting this perpetual right of way, the place for the exercise thereof was not fixed but they averred that on information and belief it was fixed along the route designated by the letters A, B, C and D on the map made by L. Q. Huey which places it on the western end of the Bourke property, crossing the same in a somewhat semi-diagonal line. It appears from the said map that it did not reach the French Town Road within the limits of the Bourke property but extended over the line into another tract designated thereon as No. "2" which formerly belonged to Mrs. A. Landry, and now to the plaintiffs herein.

They averred further that the servitude of right of way as thus outlined and agreed to by the said William M. Woodward and Adolph Bourke for the use and benefit of the property acquired by Woodward in the act of partition, was used continuously by him, his successors in title, his assigns or agents and by petitioners themselves, their author in title and their agents and tenants, continuously and without interruption from January 15, 1904, until about the year 1917. They then set out that during the year 1917 the servitude as established became burdensome to the said Adolph Bourke, because the same passed in front of his home, and, by agreement between him and Henry Y. Ronaldson who had then become the owner of the property they now own and which was entitled to the said servitude, the same was changed and fixed along the route designated by the letters E, F, G and H on the Huey map, and which according to the said map indicates a route further west than the former alleged route, running almost straight across tract No. "3" to the line of tract No. "2" from whence it continues over said tract No. "2" to the French Town Road. They alleged further that since the year 1917 when the place of exercising the servitude was changed as just referred to, their author in title, his tenants and agents, and they themselves as well as their agents and tenants, have used the same continuously and without interruption and were continuously in possession thereof until January 8, 1938.

Plaintiffs averred that since the year 1917 and for a long time prior thereto they and their author in title rented that portion of the tract of land west of Draughn Creek to tenants and the same was cultivated and farmed each year and that the said right of way was always used, as it was absolutely necessary for it to be so used, in order to farm the property as the eastern portion thereof was not accessible to the public road by wagon, truck or other vehicle. They averred that for the year 1938 and prior thereto they had rented the property to Adam Walsh who cultivated and planted crops thereon and made use of the servitude of right of way in carrying on his farming operations, but that on January 8, 1938, the defendant herein, claiming to be the owner of the property formerly belonging to Adolph Bourke and over which the servitude had been and was being exercised, refused them or their tenant, the said Adam Walsh, the use of the same, erected a barrier across both ends and threatened to use force if necessary to prevent them from using it. They set out unavailing amicable efforts to have the defendant recognize their right and prayed for a rule against him to have him show cause why the injunction sought by them should not issue.

The answer filed on behalf of the defendant after the exception of no cause of action had been referred to the merits, admitted the present ownership of the two tracts of land as partitioned between Bourke and Woodward and that the act of partition contained the stipulation hereinabove quoted, but it denied that a servitude of passage was ever legally established over the defendant's property because there was no route or location given, no width thereof or description specified and as the same could not and can not be identified it was and is an absolute nullity. The answer further set out that the defendant acquired the Bourke property in March 1926 by a deed translative of property, in good faith, and without reference to any servitude; that he immediately fenced the property, has been in the actual, open and undisturbed possession thereof for more than ten years and there-

fore if any such servitude as claimed by the plaintiffs ever existed, it was lost by the prescription of ten years acquirandi causa.

There are three points urged under the exception of no cause of action, the first and most serious of which we take to be that the act of partition containing the 'stipulation designed to grant the servitude of passage does not designate the route and does not specify the width and the length of the passage or right of way over which the servitude was to be exercised. In other words the contention may be said to be that as the servitude of passage is a discontinuous servitude (Rev.Civ.Code, Art. 727) which can be established only by title (Rev. Civ.Code, Art. 766), the same law relating to the sufficiency of description in order to make a valid conveyance of realty applies, and as it is impossible to point out any description whatsoever of the right of way in the title purporting to convey the same in this case, it follows that there was no valid conveyance and the clause or stipulation is as absolute nullity.

There can be no doubt as to the proposition above stated regarding the necessity of a sufficiently accurate description by which a tract of land purported to be sold in an act of conveyance can be properly identified, and also that the transfer of a servitude of right of passage can only be established by deed. Both of these propositions are conceded, but plaintiffs contend, and properly so in our opinion, that by the stipulation contained in the act of partition between Woodward and Bourke executed in authentic form on January 15, 1904, there appears such deed as was required by law to establish the granting of the servitude in this case, by title. It is distinctly recited that W. M. Woodward, his heirs and assigns were "to have a perpetual right of way across the lands of the said Bourke hereinabove described, to the French Town Road." What the grant failed to stipulate was the manner in which the servitude was to be exercised which, as appears to us from the very reading of Article 779 of the Revised Civil Code, is not sacramental in order to create the title to the right of way. We here quote that Article in full: "If the manner in which the servitude is to be used is uncertain, as if the place necessary for the exercise of the right of passage is not designated in the title, the owner of the estate which owes the servitude is bound to fix the place where he wishes it to be exercised."

The illustration given could hardly have fitted the situation presented in this case any better than it does. The allegations of the petition present a statement of facts coming clearly within the terms of that article. In fact the language in the allegation almost tracks the very language of the Code as we find in it the statement that *"the place for the exercise of the servitude of the perpetual right of way* over the property of Adolph Bourke *was not fixed in the act of partition wherein said servitude was created and established"* but as further alleged on information and belief, was by agreement fixed along a certain designated route marked by the letters A, B, C, and D on the map annexed to the petition. (Italics ours.) For the purpose of considering and passing on the exception of no cause of action these allegations must be taken as true, and so taken we think disclose a cause of action under the very article of the Civil Code cited.

In order to sustain his contention under the exception of no cause of action counsel refers us to the case of Burgas v. Stoutz, 174 La. 586, 141 So. 67, in which an attack on a stipulation covering the grant of a right of passage somewhat similar to the one in this case, was made on the ground that it did not state the length or width of the same. We fail to see how counsel can obtain any comfort from that decision especially when considered in connection with an exception of no cause of action, as in that case the defense was being considered on the merits and even so it was held to be without merit for the reason that the Court found as a fact from certain photographs introduced and filed in evidence that the length and the width of the right of way were readily ascertainable. In the present case, the petition sets out a right of way which had been continuously used in connection with the cultivation and operation of a farm, and necessarily therefore used as a road over which those using it drove their wagons, trucks or other vehicles, and moreover there is annexed to the petition a plat or survey designating the exact point at which the right of way was established and so used. In the cited case, the Court, in support of its holding, made use of the maxim "that which can be made certain is considered in law as certain" [page 68]. If we apply the same maxim here, we don't understand how that case can be used as authority to sustain an exception of no cause of action in this case.

The second point urged under the exception of no cause of action is that no where in the petition nor in its prayer is there a claim that the right of the plaintiffs to a servitude of passage be recognized, the only relief asked for being to enjoin the defendant from interfering with the exercise of the alleged servitude.

When the plaintiff concedes that the demand is for an injunction to restrain the defendant from interfering with the exercise of what is said to be the alleged servitude, he concedes the fact that as far as the petition discloses there is already an existing servitude, and if, accepting the allegation to be true, there would be no necessity to pray that it be recognized for the purpose of enjoining the defendant from the exercise of the right by the plaintiffs. Counsel we think is in error in stating that the main issue before the Court is whether or not the plaintiffs have any servitude at all. As we view the petition in considering the exception of no cause of action, plaintiffs maintain most strenuously that they have and have had through their authors in title since the year 1904 a right of way over the property now owned by the defendant and the issue before the Court as presented in their petition is whether or not the defendant can unlawfully interfere with their use of it.

Defendant also contends under this point that the right of way as now claimed in the petition of the plaintiffs and as shown on the Huey plat is different from that granted in the act of partition between Woodward and Bourke as the one granted in that act was intended to lead to the French Town Road whereas the one designated on the plat has no connection whatever with that road. Defendant's counsel contends that as it is now a different right of way altogether that is being asserted and one which is not established by title, the petition fails to disclose a right of action because the only way it could be now established would be under parole evidence which would be inadmissible.

As previously indicated the right of way as designated on the Huey plat crosses the defendant's property on the western end and then continues over and partly across the tract of land designated as No. "2" on the plat in order to reach its destination which is the French Town Road. As we interpret the language of the stipulation granting the right of way it was meant to create a right of passage over and across the Bourke property in order to ultimately reach the French Town Road. The obligation of the owner of the Bourke property was to furnish that right of passage over and across his property whether it led directly to the French Town Road on the property itself or to that same road at some other place. The property charged with the servitude, which was the Bourke property, was only concerned with the granting of that right of passage and if after carrying its burden, the grantee of the right found it necessary or more convenient to continue his right of way to the French Town Road over and across some other property is a matter which in our opinion could not affect the owner of that property one way or the other. The petition having alleged the establishment of the right of way over and across the defendant's property in order to ultimately reach the French Town Road, and the continuous use of that servitude, certainly in our opinion can not be said to have failed to disclose a cause of action on this ground.

The third and last point presented under the exception raises the question of the right of the plaintiffs to ask for an injunction prohibiting the interference with the alleged servitude without asking for a recognition of the servitude itself. The contention made under this point, as we understand it, is that plaintiffs should have asked for a mandatory instead of a prohibitory injunction in order to obtain the relief they sought.

The same argument as was presented on the preceding point seems to be involved in the discussion of this point. According to the allegations of the petition the servitude exists by virtue of its creation under the stipulation in the act of partition and the demand of the plaintiffs for an injunction, regardless of its nature, which after all is the relief they seek, is predicated on that servitude which already exists and which as is alleged has been enjoyed by the owners of the tract of land now owned by them ever since its creation in January 1904. When on January 8, 1938, as also alleged, the defendant interfered with their use of it by barricading it at both ends, and their amicable demands made on him to desist became unavailing, their remedy seemed to be plainly to obtain relief by way of in-

junction. That remedy seems to be clearly pointed out in the case of Burke v. Wall, 29 La.Ann. 38, 29 Am.Rep. 316, where it was held in effect that whoever acquires property and a servitude of passage belonging thereto is entitled to an injunction to protect him in the full enjoyment of the property including the servitude. Should the plaintiffs be ultimately sustained in their demand, the effect of the injunction obtained by them will necessarily maintain them in their right of enjoyment of that servitude.

We are of the opinion that the district judge was entirely correct in overruling the exception of no cause of action and we now proceed to a discussion of the case on the merits.

■ When the plaintiff sought to introduce testimony by parole to prove the use of the right of way, counsel for defendant objected to the introduction of that form of proof on the ground that it was incompetent as a servitude of a right of way can only be established by title. The objection presented the same issue as had been passed on in overruling the exception of no cause of action and by which it was held that the servitude had been established by the stipulation in the act of partition and that in the form in which it was established it operated as a real right in favor of W. M. Woodward the then owner of the property now owned by the plaintiffs, and also in favor of his heirs and assigns. The district judge correctly overruled the objection and permitted the testimony, the nature of which was to show that the servitude had been exercised as alleged in the petition, first over the route designated by the letters marked A, B, C and D on the Huey plat, and subsequently by agreement between Bourke and one Leslie Hooper who was operating the property of the plaintiffs as a tenant in 1918 and 1919, from the location as designated under the letters A, B, C and D to the one designated under the letters E, F, G and H on the same map.

■ At the time of this agreement the property was owned by Henry Y. Ronaldson who does not seem to have taken any part in the matter as according to the testimony of Hooper the agreement was made between Bourke and himself as tenant. In making the agreement however, he was acting for the benefit of the estate and as tenant, in the name of the owner of that estate, and under Article 760, Rev.Civ.Code,

it was not necessary for him to have a mandate from the owner to so act. Moreover his act seems to have been ratified and approved by the then, as well as all subsequent owners of the property, for the proof is that this new location was thereafter used continuously as a right of way by all tenants who cultivated it.

■ That Bourke had the right to change the location of the right of way clearly appears from the provisions of Article 777, Rev.Civ.Code, among which we note is one to the effect that if the primitive assignment of the servitude becomes more burdensome to the owner of the estate which owes it, he may offer to the owner of the other estate a place equally convenient for the exercise of his right. There is proof in the record to show that the original location, or assignment as it is called in the article of the Code, was near Bourke's home and it was in order to place it some distance further away that the change was made and agreed upon. From that time on the testimony of numerous witnesses shows that this new route was used by all subsequent tenants who cultivated the farm and was so being used by the tenant Adam Walsh in January 1938 when on January 8 of that year the defendant, without legal authority prevented him from using it by barricading it at both ends.

Concerning the physical appearance of the right of way there is testimony describing it from a mere cow path by some of defendant's witnesses to a rather well defined road by witnesses for the plaintiffs. Our impression from it all is that whilst it is not a graded road it is nevertheless a passage of sufficient width and clearance for vehicular traffic such as horse-drawn wagons and motor trucks to go over, as indeed some of the witnesses testify themselves having thus made use of it.

■ The defendant introduced some testimony in an effort to show that whatever use had been made of the right of way had been under some form of consideration which he received therefor, but by none of this testimony did he connect the plaintiffs themselves in any manner. He did show that he pastured some of his cattle on the property and attempted to prove that this was in the nature of a consideration paid by the tenants of the plaintiffs for the use of the right of way. The tenants admit that defendant was permitted to use part of the property for pasturage but this seems to have been more in the nature of

a neighborly courtesy than anything else. Defendant's counsel also lays great stress on a letter written to the defendant by the agent of the plaintiffs from which he contends there resulted an agreement by which the servitude was abandoned, but that letter in our opinion falls short of showing any such proposition being made on the part of the plaintiffs' agent and neither does the testimony show any acceptance by the defendant forming the basis of such an agreement. The letter as testified to by the party who wrote it, was a final effort on his part to adjust the differences between them regarding the right of way in an amicable manner before resorting to litigation.

The pleas of prescription filed on behalf of the defendant being based upon nonuser of the servitude, and the testimony showing on the contrary that it had been continuously used up to the month of January 1938, and there having been no abandonment of the same, the judgment overruling those pleas was correct in that respect also.

For the reasons herein stated it is ordered that the judgment appealed from be affirmed at the costs of the appellant.